UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JAMES DENNIS WILSON                                CIVIL ACTION NO. 11-cv-0355

VERSUS                                             JUDGE HICKS

WARDEN, RIVERBEND DETENTION            MAGISTRATE JUDGE HORNSBY
CENTER

**REPORT AND RECOMMENDATION**

**Introduction**

A Bossier Parish jury convicted James Dennis Wilson ("Petitioner") of purse snatching. A pre-sentence investigation indicated an extensive criminal history, including a multitude of misdemeanors and seven felony convictions, some of which were committed after the purse snatching offense. Most of the crimes involved some type of theft or battery. The court imposed the maximum sentence of 20 years at hard labor. The conviction and sentence were affirmed on direct appeal. State v. Wilson, 32 So.3d 1152 (La. App. 2d Cir. 2010), writ denied, 67 So.3d 1252 (La. 2011). Petitioner did not file a post-conviction application. His federal habeas petition lists two grounds: (1) actual innocence and (2) ineffective assistance of counsel. For the reasons that follow, it is recommended the petition be denied.

**Actual Innocence/Sufficiency of the Evidence**

    **A. Relevant Facts**

Mary Thompson was in the Wal-Mart parking lot in Bossier City when a man grabbed her purse and pulled so hard that she fell to the ground and hit her head. Ms. Thompson

described the thief as a black man with a goatee, wearing a knit cap and plaid shirt. Billy Massey and his wife heard Ms. Thompson scream, and Mr. Massey chased the thief until he pointed a gun at Massey. Mr. Massey saw the man get in the passenger side of a gold Ford Taurus. Another witness was able to catch up to the Taurus and write down its license plate number. Police tracked the car to Felicia Jenkins, who told a detective that her cousin Jeremy had taken her car to have a flat tire fixed, but she did not know her cousin's last name.

Ms. Thompson's purse contained her cell phone. Police discovered that a number of calls were made from the phone to a residence in Los Angeles where Petitioner had stayed and to his cousin, Tequila Wilson. An officer familiar with Tequila Wilson and Petitioner noted that the victim's description of the purse snatcher matched Petitioner.

A detective showed Ms. Thompson a photo lineup. She could not immediately identify Petitioner, but she eliminated all but two pictures, one of which was Petitioner's. The detective showed the lineup to Billy Massey. He also was able to narrow his choice to two photos, one of which was Petitioner's. His wife, on the other hand, immediately chose Petitioner as the purse snatcher.

Petitioner was arrested. His mother and some other relatives later reported to police that Jerry James Wilson, Petitioner's uncle, told them that he was actually the person who had taken the purse. Jerry was brought in for questioning and said that his friend Darnell Sellers drove his girlfriend's gold Ford Taurus to the Wal-Mart. Jerry said he was in the car alone when Sellers suddenly hopped in the driver's seat holding a purse. The detective noted

that some of the details Jerry gave were incorrect, e.g., on which side of the parking lot the car was parked, and which side of the car the purse snatcher entered. Police nonetheless put together a photo lineup with a picture of Darnell Sellers in it and showed it to Ms. Thompson. She did not recognize anyone in that lineup, but she asked to see the first lineup again. She positively identified Petitioner.

The defense presented testimony from family and friends who all claimed that Jerry, now deceased, committed the theft with Sellers. Tequila Wilson testified that it was Jerry, not Petitioner, who called her with the victim's phone. The mother of one of Petitioner's children testified that Jerry told her he was involved in the crime and that Petitioner did not commit it. Petitioner's mother and cousin testified that they saw Jerry with the purse and he told them Petitioner had not been involved. Petitioner's mother admitted that she paid Jerry to go to the police. The jury heard all of this evidence and convicted Petitioner of purse snatching.

### B. Actual Innocence

Petitioner's habeas petition labels one claim as "actual innocence" and refers to the attached memorandum in support. The memorandum asserts that the detective made mistakes in the investigation and used a suggestive photo lineup. Petitioner also asserts in the memorandum that he told the detective he was in California with his Aunt Mary Wilson when the alleged crime was committed, and he summarizes the statements and testimony of the various defense witnesses that are favorable to the defense.

Actual innocence may serve as a gateway to overcome a procedural default or lack of timeliness, but the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 133 S.Ct. 1924, 1931 (2013). Even when applicable, the exception applies to a "severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " Id. at 1933. Petitioner does not fall within that narrow category. He has not submitted new evidence, and there is ample evidence that a reasonable juror could accept to vote for conviction.

### C. Exhaustion Defense Waived by State

It appears that Petitioner is perhaps attempting to make a claim that the evidence was insufficient to support his conviction. That was a claim presented by his counsel to the intermediate appellate court. Petitioner later filed a pro se writ application to the Supreme Court of Louisiana, but his application did not present a sufficiency of the evidence (or actual innocence) argument. (The application was not included in the record filed by the State, but it is attached as an exhibit to the petition.) Thus, Petitioner did not exhaust his state court remedies with respect to a sufficiency of the evidence (or actual innocence) claim. O'Sullivan v. Boerckel, 119 S.Ct. 1728 (1999) (claim not exhausted if not included in discretionary writ application to state's high court).

The district attorney, however, states in his answer that Petitioner "has exhausted all available State remedies." If not for the district attorney's waiver of this defense, this claim would be subject to dismissal for lack of exhaustion. 28 U.S.C. § 2254(b)(1)(A) and (b)(3).

Page 4 of 13

Attorneys who represent the State often mistakenly assume that because a case has progressed to the Supreme Court of Louisiana, claims have been exhausted. Claims are not exhausted, however, unless they are properly presented in the Petitioner's briefs at each level of the state court system, either on appeal or post-conviction. Counsel should ensure that such exhaustion happened before conceding this defense. This is also why it is important the State include in the record filed with this court not only the decisions by the state courts but the *briefs* filed by the Petitioner at each stage of appellate and post-conviction review. Exhaustion is determined based on presentation of the claims in the briefs, not whether the state court addressed them. Smith v. Digmon, 98 S.Ct. 597 (1978).

### D. Merits of the Claim

Turning to the merits of the sufficiency issue, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The state appellate court applied the Jackson standard when it addressed this issue. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential

standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012).

The state appellate court discussed the competing evidence. It properly noted that the jury, as the trier of fact, was free to evaluate the credibility of the witnesses. If the evidence was reviewed in the light most favorable to the prosecution, the jury could have reasonably concluded that Petitioner committed the purse snatching. State v. Wilson, 32 So.3d at 1155-57. That was an entirely reasonable application of the Jackson standard. Neither the state appellate court nor this federal habeas court may weigh the credibility of the witnesses or reassess the weight of the competing lines of evidence presented to the jury. "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011). The state court's adjudication of the sufficiency of the evidence claim was not an objectively unreasonable application of Jackson, so habeas relief is not permitted on this claim.

**Ineffective Assistance of Counsel**

    **A. Procedural History; Exhaustion**

Petitioner did not face the purse snatching charges until some months later when Deputy U. S. Marshals arrested him in California and returned him to Louisiana. Petitioner posted bond and was released from jail, but he did not appear on the day set for his trial. A bench warrant issued. He did not return to court on the charges until he was arrested six years later.

Petitioner was represented throughout his appearances by appointed Indigent Defender Board ("IDB") attorneys. On the day trial was set to begin, retained attorney William Nader appeared and filed a motion to enroll and to continue the trial. The court ruled that Mr. Nader could enroll, but his motion for continuance would be denied. Nader chose not to enroll, and the case proceeded to trial with IDB attorney Carlos Prudhomme. Attorney Prudhomme also sought a continuance on the grounds that he had been assigned the case just two weeks before and needed more time to prepare the defense. He said he had, however, reviewed the IDB's files and believed he could adequately defend Petitioner. The court denied the request for a continuance, and the case went to trial.

Attorney Frank Brown represented Petitioner on direct appeal. His brief listed four assignments of error. The first two were that (1) the trial court erred when it did not allow retained attorney Nader to enroll and grant a continuance and (2) Petitioner was denied effective assistance of counsel when the court denied the motion to enroll and motion to continue. The two assignments of error were consolidated for argument, and that argument focused on the denial of attorney Nader's requests. Attorney Prudhomme, who conducted the trial, was mentioned, but no particular mistakes by him were articulated. The brief did mention that Prudhomme had only one visit with Petitioner before trial and needed to subpoena witnesses. The brief did not explain who those witnesses were, what they would testify to, or how more visits by Prudhomme would have benefitted the case. The argument ended with a general request that the state appellate court review the record to ascertain whether Petitioner was afforded a fair trial and effective counsel.

The appellate court noted its general rule that a claim of ineffective assistance is more properly raised in an application for post-conviction relief filed in the trial court. It went on to say that a claim may nonetheless be resolved on direct appeal if the record is sufficient. The court then concluded: "Based on our review of the record, we find that there is insufficient evidence to make a ruling on this claim on appeal." Wilson, 32 So.3d at 1158-59.

Petitioner filed a pro se writ application to the Supreme Court of Louisiana. It also listed as an issue denial of effective assistance of counsel based on the trial court's denial of the motion to enroll and continue. He argued that both retained and appointed counsel were unfamiliar with his case and that Prudhomme visited him only once, issued no subpoenas, conducted no investigation, did not interview potential witnesses, did not subpoena Wal-Mart security surveillance recordings, did not subpoena bus station records to show Petitioner was absent the state at the time of the crime, did not subpoena alibi witness Mary Wilson who would say Petitioner was in California, did not raise speedy trial objections, and did not file a motion to suppress the identification evidence. The Supreme Court denied the application without comment.

Petitioner's federal petition lists as ground one denial of effective assistance of counsel. For supporting facts, Petitioner writes that counsel "failed to present alibi defense" and "failed to present actual innocence defense." He then refers to the attached memorandum. A review of that memorandum includes several attacks on the adequacy of the police investigation, a complaint that Petitioner was arrested in violation of the Fourth

Amendment, and various arguments as to why Petitioner is innocent. The memorandum does not, however, set forth any particular argument to support a claim of ineffective assistance of counsel.

Petitioner later filed a reply memorandum (Doc. 25) in which he did finally brief to this court a claim of ineffective assistance of counsel. He supported it, however, with a brand new arguments that attorney Prudhomme (1) should have impeached an investigating detective on grounds the detective was taking mind-altering medications at the time he testified and (2) did not raise the possibility of obtaining an alibi witness when arguing for a continuance.

**B. Merits**

It does not appear Petitioner properly presented at all levels of state court review the claim he asserts here that counsel did not present his actual innocence defense, but the State has waived the exhaustion defense. Turning to the merits, the record shows that counsel presented testimony from four witnesses who all claimed that Petitioner's uncle was the actual perpetrator of the purse snatching. The defense was not successful, but that does not mean counsel's performance fell below the objective standard of reasonableness required by Strickland v. Washington, 104 S.Ct. 2052 (1984).

Petitioner proposes a variety of means by which counsel allegedly could have attacked the State's case, such as presenting evidence of alleged deficiencies in the investigation or presenting Wal-Mart surveillance or bus station records. Petitioner did not, however, submit to the state courts any actual evidence or specific facts that provide grounds to find a

reasonable probability that Petitioner would have been acquitted had counsel presented such evidence. Such a finding is necessary to show prejudice under <u>Strickland</u>. All Petitioner offers is speculation, and he is not entitled to a federal hearing to flesh out the proposed defenses. He must base his <u>Strickland</u> claim solely on the contents of the state court record. <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388 (2011); <u>Pape v. Thaler</u>, 645 F.3d 281, 288 (5th Cir. 2011). That record provides no basis for relief on this aspect of the claim.

Petitioner's other attack on counsel's performance is the alleged lack of an alibi defense. Petitioner argues that counsel should have subpoenaed his aunt, Mary Wilson, who would testify that Petitioner was in California with her at the time of the purse snatching. Petitioner talks about Ms. Wilson's alleged alibi testimony at page 12 of his federal memorandum and concludes with, "See Attached Exhibit E statement of Mary Wilson." It appears, however, that there is no such statement attached to the memorandum or otherwise in the record.

What is in the record is the trial testimony of Petitioner's mother and cousin. His mother, Linda Willis, testified that she learned about the purse snatching allegations when several police officers rushed into her home to search for her son. She said that, after the police left, her brother admitted that he and not Petitioner had taken the purse, and he showed the purse to Ms. Willis. She said she later spoke to a detective and explained what had happened. Defense counsel asked if, "during this time," Petitioner was still living in the area. She said she believed he was on his way to California with a bus ticket that she bought "after the first of the month." The month at issue was not specified. She testified that Petitioner

went to stay with her sister, Mary Wilson, on Ms. Willis's suggestion that Petitioner go to California and try to find a job.

Belinda Wilson, Petitioner's cousin, testified that when she went to see a detective, some time after the purse snatching, Petitioner was in California with his aunt. Wilson said she talked to Petitioner on the phone some during his stay in California but did not recall if she ever mentioned to him that he was being accused of a Louisiana purse snatching. The questions and answers are maddeningly vague as to when Petitioner went to California, but the strong implication is that it was *after* the date of the purse snatching. Notably, none of the defense witnesses stated that it was impossible for Petitioner to have committed the theft because he was in California. Rather, their only defense of Petitioner was that his uncle actually committed the crime. If there was any factual basis for the contention that Petitioner was in California on the date of the crime, his mother and cousin would almost certainly have made mention of that in their testimony.

The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." Coleman v. Thaler, 716 F.3d 895, 906 (5th Cir. 2013). For a petitioner to demonstrate Strickland prejudice on such a claim, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). The district court's grant of habeas relief in Evans was reversed because the district court assumed that witnesses, from whom

Page 11 of 13

no affidavits were presented, would have testified favorably for the defense. See also Bruce v. Cockrell, 74 Fed. Appx. 326 (5th Cir. 2003)(rejecting Strickland claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify at the punishment phase of his trial."); and O'Brien v. Dretke, 156 Fed. Appx. 724 (5th Cir. 2005) (denying COA when witness's affidavit was submitted but it "d[id] not indicate what the nature of his testimony would have been.")  Petitioner has not presented an affidavit from Ms. Wilson, the trial testimony contradicts his alibi theory, and he is not allowed a federal evidentiary hearing in an effort to flush out this claim. Pinholster; Rabe v. Thaler, 649 F.3d 305 (5th Cir. 2011) (claim of uncalled alibi witness had to be decided based only on state court record). Petitioner is not entitled to habeas relief on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of February, 2014.

Mark L. Hornsby
U.S. Magistrate Judge